**LIBERTY LINCOLN–MERCURY, INC., Plaintiff,**

v.

**FORD MOTOR COMPANY, Defendant.**

**Civil Action No. 95–3121 (MTB).**

United States District Court,
D. New Jersey.

March 14, 1996.

Bressler, Amery & Ross by Eric L. Chase and Genevieve K. LaRobardier, Florham Park, New Jersey, and Carlet, Harrison & Klein by Norman Klein, Clifton, New Jersey, for Plaintiff.

Pitney, Hardin, Kipp & Szuch by Dennis R. LaFiura, Morristown, New Jersey, and Mayer, Brown & Platt by Michael R. Feagley, Chicago, Illinois, for Defendant.

## OPINION

BARRY, District Judge.

This matter comes before the court on the motion of defendant Ford Motor Company ("Ford") for partial summary judgment and for dismissal of certain counts of the amended complaint and the cross-motion of plaintiff Liberty Lincoln–Mercury ("Liberty") for partial summary judgment. This court held oral argument on the matter on March 5, 1996.

## I. STATEMENT OF THE CASE

The facts surrounding this motion are not in dispute. Plaintiff became an authorized Lincoln–Mercury dealer on March 11, 1976, when plaintiff and defendant entered into standard Lincoln and Mercury Dealer Sales and Service Agreements (the "Agreements"). *Pl.'s 12(g) Statement of Undisputed Facts* ("Pl.'s 12(g) Statement"), ¶ I.A.; *Def.'s 12(g) Statement of Undisputed Facts* ("Def.'s 12(g) Statement"), ¶ 1. The Agreements were amended on May 7, 1979 to record a change in ownership interests in Liberty. *Pl.'s 12(g) Statement*, ¶ I.B.

Defendant warranties the vehicles it manufactures against manufacturing defects and damages, with the warranties running from defendant to purchasers of new Ford vehicles. *Id.* at II.A. Although the manufacturer issues the warranty, the Agreements require the dealer to perform the necessary warranty repairs (parts and labor) at no direct cost to the customer, whether or not the dealer had sold the vehicle to the particular purchaser. *Id.* at II.C. Thus, when a Ford vehicle is covered by the manufacturer's warranty, the owner may bring the vehicle to any franchised dealer and have the vehicle repaired at no cost to him or her.

When a dealer repairs an automobile under warranty, the dealer submits a reimbursement claim to defendant for the parts and labor used in satisfying the warranty. *Agreements* (attached at *Certif. of Robert X. Robertazzi* ("Robertazzi Certif."), Exs. A, B.), ¶ 4(b)(4), at 8. The amount of the reimbursement is determined by a schedule published in defendant's Warranty and Policy Manual ("Manual"), which is revised and reissued annually. *Def.'s 12(g) Statement,* ¶¶ 3–4. Currently,[1] defendant generally reimburses dealers at a standard rate of 40% above the dealer's cost for warranty parts on 1994 (or later) model year vehicles, 35% for 1993 model year vehicles, and 30% for earlier years' vehicles.[2] *Id.* at ¶ 5; *Robertazzi Certif.,* Ex. D. The Manual does not contemplate reimbursing dealers at a reasonable retail rate, or even at the suggested retail rate, which is 63% over cost for parts. *Pl.'s 12(g) Statement,* ¶ II.G. If a dealer disagrees with the parts reimbursement issued, the Manual provides an appeal procedure whereby a dealer may challenge the amount of reimbursement. *Warranty Manual* (attached at *Aff. of James W. Suhay,* Ex. A),[3] 6.5–1.

A bill which supplemented the New Jersey Franchise Practice Act ("NJFPA" or "Act") states,

> If any motor vehicle franchise shall require or permit motor vehicle franchisees to per-

---

1. In prior years, defendant reimbursed dealers at the rate of 30% above dealer's cost for parts used in warranty repairs. *Def.'s 12(g) Statement,* ¶ 5.

2. In contrast, defendant generally reimburses its dealers for labor costs at rates preapproved by defendant which approximate the "retail" rate for such labor—in other words, the labor rate paid for repairs to vehicles no longer covered by warranty. *Pl.'s 12(g) Statement,* ¶ II.E.

3. This exhibit is a 1991 Manual which does not reflect the current parts reimbursement schedule employed by defendant.

form services or provide parts in satisfaction of a warranty issued by the motor vehicle franchisor:

a. The motor vehicle franchisor shall reimburse each motor vehicle franchisee ... for such parts as are supplied, in an amount equal to the prevailing retail price charged by such motor vehicle franchisee for such ... parts in circumstances where such ... parts are supplied other than pursuant to warranty.

N.J.Stat.Ann. § 56:10–15. On December 12, 1992, plaintiff submitted a letter to defendant requesting an increase in its warranty parts reimbursement from 30% (the schedule reimbursement rate at the time) to retail markup, as required by the NJFPA. *Robertazzi Certif.*, Ex. E.

In July 1992, after plaintiff provided documentation for a sample of retail repairs, defendant agreed to reimburse plaintiff for warranty parts at plaintiff's retail rate, a mark-up of 77% over cost. *Id.*, Ex. M; *Def.'s 12(g) Statement*, ¶ 8. In order to recoup the costs incurred by complying with the NJFPA, however, defendant assessed—and continues to assess—a surcharge on new vehicles sold by plaintiff. *Decl. of Philip Meilak* ("Meilak Decl."), ¶ 3. The surcharge is added to the cost of the vehicle after plaintiff sells the car to the customer.[4] Defendant concedes that this surcharge is utilized for the purpose of recovering the cost of reim-

bursing plaintiff for warranty parts at the retail rate. *Id.*

Plaintiff filed suit against defendant on October 5, 1992, and this suit was dismissed without prejudice in May 1994.[5] *Pl.'s 12(g) Statement*, ¶¶ III.S., III.T. Plaintiff filed a Complaint in this matter on June 30, 1995 and amended it on July 7, 1995. The amended complaint alleges: 1) violation of the NJFPA, N.J.Stat.Ann. § 56:10–15, 2) violation of the NJFPA, N.J.Stat.Ann. § 56:10–7, 3) violation of the Automobile Dealer's Day in Court Act, 15 U.S.C. §§ 1221–1225, 4) violation of section 2(c) of the Robinson–Patman Act, 15 U.S.C. § 13(c), 5) breach of contract, 6) breach of the covenant of good faith and fair dealing, 7) unjust enrichment and conversion, 8) bad faith, 9) estoppel, and 10) quantum meruit.

Defendant has moved to dismiss Counts One (in part), Two, Three, Four, Seven, Nine, and Ten. Defendant has also moved for partial summary judgment on Counts One (in part), Five, Six, and Eight.[6] Plaintiff has cross-moved for partial summary judgment as to liability on all Counts. For the reasons stated herein, the court grants plaintiff's motion for summary judgment as to liability since December, 1991, on Count One and defendant's motion to dismiss Count Four. Because the remedies sought by plaintiff under the remaining Counts are duplicative of those sought within these claims,[7]

---

**4.** Prior to April 1, 1993, the surcharge was calculated each month by taking the incremental reimbursement cost of complying with the NJFPA (the difference between the 77% markup and defendant's standard warranty parts markup—30 to 40%) and dividing it by the number of vehicles sold by plaintiff in that month. *Meilak Decl.*, ¶ 4. This yielded a "per vehicle" surcharge which changed from month to month, but which accurately reflected the incremental reimbursement cost each month.

Effective April 1, 1993, defendant changed the system by which the surcharge was administered and now applies a fixed surcharge to each vehicle plaintiff sells. *Id.* at ¶ 5. Thus, the monthly incremental reimbursement cost paid by defendant may be more or less than the monthly surcharges paid by plaintiff, depending upon the number of vehicles plaintiff sells and the number of warranty repairs plaintiff performs. Defendant adjusts the surcharge from time to time to address these imbalances between the total incremental reimbursement cost and the total surcharges paid by plaintiff. *Id.*

**5.** Prior to dismissal, plaintiff had made a motion for class certification, which Judge Alfred J. Lechner, Jr. of the District of New Jersey denied. *See Liberty Lincoln Mercury, Inc. v. Ford Marketing Corp.*, 149 F.R.D. 65 (D.N.J.1993).

**6.** In addition, defendant has moved to strike the certification of Kurt R. Olcheski and paragraphs 15–25, 28–36, and 39–42 of the certification of Robert X. Robertazzi. The court need not decide this motion, however, as the court has not relied upon the challenged assertions and certification.

**7.** For each Count, plaintiff's prayer for relief includes: 1) a declaration that defendant's actions are unlawful (except under Counts Seven through Ten), 2) compelling defendant to reimburse plaintiff the incremental amount by law due, with prejudgment and postjudgment interest, 3) awarding attorney's fees and costs of suit, and 4) such other and further relief as the court deems equitable and just. Plaintiff also seeks treble damages pursuant to the Robinson–Pat-

and because, at oral argument, plaintiff agreed that it will not press those claims if it prevails, as it will, on Count One—at least as to the allegations subsequent to December, 1991—those Counts will be dismissed.

## II. DISCUSSION

### A. New Jersey Franchise Practice Act, N.J.Stat.Ann. § 56:10–15

This is a case of first impression in the State of New Jersey. Under the Agreements, when a vehicle is covered by a Ford warranty, the dealer must repair the vehicle, pursuant to the warranty, at no cost to the customer. Often times, the repair work will involve the dealer replacing or providing parts for the vehicle. When this happens, the NJFPA requires the franchisor-manufacturer to reimburse the franchisee-dealer "in an amount equal to the prevailing retail price charged" by the dealer for such parts, so long as the retail price is not unreasonable. N.J.Stat.Ann. § 56:10–15. The question before the court, then, is whether it is permissible under the NJFPA for defendant to reimburse plaintiff for parts used in warranty repairs at the retail rate (77%), yet impose a surcharge on vehicles sold by plaintiff in order to make up the difference between the retail rate and the standard reimbursement rate.[8]

Defendant's position is that the Act does not prohibit manufacturers from recovering the increased costs of complying with the NJFPA by assessing a surcharge on vehicle prices. Def.'s Mem. in Support of Motion to Dismiss, at 3; Def.'s Reply Mem. in Support of Motion to Dismiss ("Def.'s Mot. to Dismiss Reply"), at 5–10. Defendant points to Acadia Motors, Inc. v. Ford Motor Co., 44

F.3d 1050 (1st Cir.1995), in which the Court of Appeals for the First Circuit interpreted a Maine statute similar to the NJFPA.[9] There, the court found that the statute permitted manufacturers to increase vehicle prices in order to recover its increased compliance costs because the statute says nothing about wholesale or retail prices. Id. at 1056. The court stated, "[I]t is quite commonplace for manufacturers and other regulated entities to pass on to retailers and consumers their costs of complying with regulatory statutes. This is so even when the costs are passed on to the 'beneficiaries' of the regulations." Id. Similarly, defendant states that the NJFPA permits manufacturers to recoup the costs of complying with the Act by surcharging plaintiff's vehicle sales because the Act does not, by its terms, prohibit this.

█ This court disagrees. The NJFPA is a remedial statute which is intended to equalize the disparity in bargaining power which, so often, characterizes franchisor-franchisee relationships. Westfield Centre Serv., Inc. v. Cities Serv. Oil Co., 86 N.J. 453, 461–65, 432 A.2d 48 (1981). The NJFPA clearly states that manufacturers must reimburse dealers for warranty parts at the retail rate as long as the rate is not unreasonable. N.J.Stat. Ann. § 56:10–15. Defendant refused to do so until plaintiff explicitly requested compliance with the Act. Robertazzi Certif., Ex. D. When defendant finally agreed to conform its conduct to the Act, it imposed a surcharge on plaintiff which essentially nullified its compliance and created an end-run around the Act.

Even assuming that the NJFPA would permit franchisor-manufacturers to recover

---

man Act (Count Four) and punitive damages pursuant to the NJFPA (Counts One and Two), the Automobile Dealer's Day in Court Act (Count Three), and under the theories of unjust enrichment and conversion (Count Seven) and bad faith (Count Eight). Plaintiff also seeks an injunction prohibiting defendant from further recoupment under the NJFPA.

8. Plaintiff states that for purposes of the pending motions, it claims liability "only on the reimbursement amounts recovered by Ford by illegal surcharge since December 1991." Pl.'s Br., at 56. Reimbursements prior to this period, in any

event, are time-barred by virtue of the Agreements themselves.

9. The Maine statute states,

If a motor vehicle franchisor requires or permits a motor vehicle franchisee to ... provide parts in satisfaction of a warranty created by the franchisor, the franchisor ... shall reimburse the franchisee for any parts so provided at the retail rate customarily charged by that franchisee for the same parts when not provided in satisfaction of a warranty.

Me.Rev.Stat.Ann. tit. 10, § 1176 (West 1994).

their compliance costs from franchisee-dealers, an assumption that may not be correct, certainly defendant is correct when it states that the NJFPA does not dictate the manner in which franchisor-manufacturers may recover these costs, and the Act is silent regarding wholesale prices. *Def.'s Mot. to Dismiss Reply,* at 5–7. This does not mean, however, that all methods of cost-recovery are permissible. Defendant's method certainly is not. Defendant is engaged in a shell game, the purpose of which is to avoid, altogether, the costs of complying with the NJFPA. The Act does not contemplate, nor does it permit, a franchisor to knowingly violate the NJFPA and, once a franchisee pursues its statutory rights, vitiate the Act's purpose through the imposition of a surcharge.

The warranty reimbursement provision of the Act is, in part, a burden-shifting provision which is intended to require the franchisor to bear the expenses associated with fulfillment of the warranty. *Legislative Statement,* Assembly No. 1956 (May 24, 1976). The legislative history states that the NJFPA "is designed to remove the franchisor's present opportunity to isolate himself from the warranty he issues." *Id.* Plaintiff currently must bear some of this burden when it is required by the Agreements to provide parts for warranty-covered vehicles at a cost below that which it could charge to non-warranty customers, and below that which defendant, itself, recommends to be the retail price.

It would be formalistic, in the extreme, to find that defendant is in compliance with the NJFPA when it charges-back the very benefits which the Act intends to confer upon franchisees such as plaintiff. This is not a case in which the costs of regulation are being spread over several parties, with some of the burden happening to fall on the shoulders of the beneficiaries of the legislation. This is not even a case in which all New Jersey Lincoln–Mercury dealers are subject to the same surcharge regime as a result of the NJFPA. *Compare Acadia Motors,* 44 F.3d at 1052 (all Maine Ford dealers receive retail mark-up of 63% above cost, and all are subject to surcharge). Rather, defendant has chosen to disobey the Act and is targeting the only dealer who has forced compliance to bear the financial burdens associated with the Act.

Moreover, unlike the Maine Act at issue in *Acadia Motors,* which the court found was intended to protect non-warranty consumers rather than dealers,[10] the NJFPA "offers protection to the competent retailer against arbitrary actions by manufacturers who too often hold a life-and-death power over his business and his ability to serve his customers." *Legislative Statement.* Under the Agreements, plaintiff is required to perform warranty repairs on Lincoln and Mercury vehicles at no cost to the customer. With plaintiff's high proportion of warranty repairs in relation to retail work,[11] the surcharge regime—which puts plaintiff in the same position as if it were reimbursed the standard thirty to forty percent above cost—causes a running net loss to the dealership. *Supp. Certif. of Kurt R. Olcheski,* ¶ 7, Ex. D. Thus, plaintiff is in the position of either breaching its contract with defendant or fulfilling its contractual obligations and losing money as a direct result of this obligation. In contrast, were defendant to pay plaintiff its retail rate for warranty parts in compliance with the NJFPA, the result would be a moderate net gain for plaintiff's parts and services operation. *Id.* at ¶ 9, Ex. E.

In short, defendant's surcharge regime violates the clear language of the NJFPA. Moreover, although the Act is silent regarding whether and how franchisor-manufacturers may distribute compliance costs, it cannot be the case that the franchisee-dealers—the class of intended beneficiaries—bear the entire burden. Were this so, the dealers' only statutory benefit, increased warranty reimbursement, would be a nullity, and dealers would cease being beneficiaries of the NJFPA. This would fly in the face of the intent of the New Jersey legislature as ex-

---

**10.** *See Acadia Motors,* 44 F.3d at 1056 & n. 9.

**11.** Defendant does not argue that plaintiff performs excessive warranty and extended service protection repairs or that its prevailing retail rate is not reasonable. *Supp. Certif. of Kurt R. Olcheski,* ¶ 6, Ex. C.

pressed in the amendment's legislative history, and would undermine the purpose of the Act. *Legislative Statement.*

### B. Section 2(a) of the Robinson–Patman Act, 15 U.S.C. § 13(a)

The Fourth Count of the Complaint alleges a violation of section 2(a) of the Robinson–Patman Act, 15 U.S.C. § 13(a). The Robinson–Patman Act, a 1936 amendment to the Clayton Act, provides,

> It shall be unlawful for any person engaged in commerce, in the course of such commerce ... to discriminate in price between different purchasers of commodities of like grade and quality, ... where such commodities are sold for use, consumption, or resale within the United States ..., and where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly.

15 U.S.C. § 13(a). As part of its *prima facie case,* plaintiff must establish the existence of price discrimination. For purposes of the Robinson–Patman Act, a discrimination in price is "merely a price difference." *Texaco v. Hasbrouck,* 496 U.S. 543, 558, 110 S.Ct. 2535, 2544, 110 L.Ed.2d 492 (1990); *F.T.C. v. Anheuser–Busch, Inc.,* 363 U.S. 536, 549, 80 S.Ct. 1267, 1274–75, 4 L.Ed.2d 1385 (1960); *J.F. Feeser, Inc. v. Serv–A–Portion, Inc.,* 909 F.2d 1524, 1531–32 (3d Cir.1990).

■ Plaintiff's evidence fails to demonstrate the existence of a price difference. Plaintiff argues that the surcharge increased the price it paid for vehicles above the wholesale price its competitors enjoyed. *Pl.'s Br.,* at 31. While it is true that no other New Jersey Lincoln or Mercury dealer was or is subject to a surcharge, this is because no other dealer attempted to enforce the NJFPA. Plaintiff is being reimbursed for warranty parts at the rate of seventy-seven percent above cost at the same time that plaintiff's competitors are being reimbursed the standard thirty to forty percent above cost. The surcharge was merely a device to recoup the extra costs defendant incurred by reimbursing plaintiff at the retail rate.

Thus, the surcharge *eliminated* any price difference that existed by virtue of plaintiff's enforcement of the NJFPA. Stated somewhat differently, through the imposition of a surcharge, plaintiff was placed in the *same* position as its competitors: all dealers were effectively reimbursed at the standard rate, albeit in violation of the NJFPA. Thus, there was no price difference.

Plaintiff also states that the surcharge forced it to sell vehicles at prices too high for it to compete with other dealers in the market. *Pl.'s Br.,* at 33. This statement is contradicted by plaintiff's repeated contention that it was unable to pass-through the surcharge of its customers. *Supplemental Certif. of Robert X. Robertazzi* ("Robertazzi Supp. Certif."), ¶ 28, Ex. D; *Pl.'s Br.,* at 27, 33, 41. If plaintiff could not increase the wholesale cost of its vehicles, it alone bore the burden of the surcharge. The result was that plaintiff did not receive any benefit from the increased reimbursement; it was, for all intents and purposes, in the same financial position as other dealers with respect to warranty parts reimbursement and vehicle sales.[12]

In short, the surcharge was nothing more than defendant's attempt to impose on plaintiff the costs of complying with the NJFPA. Although these actions violate the NJFPA, they do not create a price difference among plaintiff and its competitors which violates section 2(a) of the Robinson–Patman Act.

### III. CONCLUSION

For the reasons stated herein, the court grants plaintiff's motion for summary judgment as to liability, since December, 1991 only, on Count One of the Complaint and grants defendant's motion to dismiss the pre-December, 1991 claims alleged in Count One and to dismiss Count Four. With the consent of plaintiff, the remaining counts will be dismissed, and this court, therefore, need not

---

12. Of course, if defendant "oversurcharged" plaintiff's vehicles, as plaintiff argues, plaintiff would be worse off than its competitors. The oversurcharge claim pertains to particular surcharges, however, and not to the structure of the surcharge system and whether it results in a price difference. Because plaintiff moves for summary judgment only as to liability, the court need not reach the issue of whether defendant oversurcharged plaintiff on particular vehicles.

reach the pending motions addressed to those counts. An appropriate order will issue.

### *ORDER*

This matter comes before the court on the motion of defendant Ford Motor Company for dismissal of Counts One (in part), Two, Three, Four, Seven, Nine, and Ten, and for partial summary judgment as to Counts One (in part), Five, Six, and Eight, and the motion of plaintiff Liberty Lincoln–Mercury, Inc. for partial summary judgment as to liability only; and

for the reasons expressed in this court's opinion of even date,

IT IS on this 13th day of March, 1996,

ORDERED that plaintiff's motion for summary judgment as to liability since December 1991 on Count One is hereby granted; and it is further

ORDERED that defendant's motion to dismiss the pre-December, 1991 claims alleged in Count One and to dismiss Count Four is hereby granted; and it is further

ORDERED that, with the consent of plaintiff, the remaining counts are dismissed and the pending motions addressed to those counts need not be reached.