PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 11-1258 and 11-1307
_____

LIBERTY LINCOLN-MERCURY, INC.;
FETTE FORD, INC.;
CAUSEWAY FORD LINCOLN-MERCURY, INC.;
ALL AMERICAN FORD;
BURLINGTON LINCOLN MERCURY SUZUKI;
CHAS S. WINNER d/b/a WINNER FORD;
COUNTRY FORD MERCURY JEEP;
D'AMICO LINCOLN MERCURY, INC.;
DAYTON FORD, INC.; DOWNS FORD, INC.;
FORD OF ENGLEWOOD, INC.;
FREEHOLD FORD, INC.;
GEORGE WALL LINCOLN-MERCURY, INC.;
HILLSIDE AUTO MALL, INC.;
IRWIN LINCOLN-MERCURY;
JACK TREBOUR FORD; KEN SMITH MOTORS, INC.;
LARSON FORD, INC.; LICCARDI FORD, INC.;
LICCARDI LINCOLN MERCURY;
LILLISTON FORD, INC.;
MARGARINO FORD-MERCURY AND DAEWOO, L.L.C.;
MAHWAH SALES & SERVICE, INC.;
MALOUF FORD, INC.;
MALOUF LINCOLN-MERCURY, INC.;
MAPLECREST FORD OF MENHAM;
MAPLECREST LINCOLN-MERCURY, INC.;

MEDFORD FORD;
MONTCLAIR BLOOMFIELD MOTORS, INC.;
MULLANE FORD, INC.; OASIS FORD;
PALISADE MOTORS, INC. d/b/a C&C FORD, INC.;
PARK AVENUE FORD; PISTILLI FORD, INC.;
POINT PLEASANT FORD;
QUALITY LINCOLN MERCURY HYUNDAI, INC.;
RICKLES LINCOLN-MERCURY, L.L.C.;
RIDGEWOODS VILLAGE FORD, INC.;
RITTENHOUSE-KERR FORD, INC.;
ROUTE 23 AUTOMALL;
SOUTH SHORE FORD, INC.; STADIUM FORD, L.L.C.;
STRAUB LINCOLN-MERCURY; TOM'S FORD;
TOWN AND COUNTRY MOTORS, INC.;
TOWN MOTORS; VALLEY FORD;
WARNOCK FORD; WAYNE AUTO SALES;
WAYNE MOTORS, INC.; WEISLEDER, INC.;
WOODBRIDGE LINCOLN-MERCURY;
WYCKOFF FORD, INC.;
WYMAN FORD, INC., all New Jersey corporations; and
CAPITAL CITY FORD, INC.; ED CARNEY FORD, INC.;
RITTENHOUSE-KERR LINCOLN-MERCURY, INC.; and
RIVERVIEW FORD OF PENNSVILLE, INC.,
Delaware corporations,

v.

FORD MOTOR COMPANY,

Appellant No. 11-1258

2

ALL AMERICAN FORD;
BURLINGTON LINCOLN MERCURY SUZAK;
CAUSEWAY FORD LINCOLN-MERCURY, INC.;
CFORD, L.L.C.; COUNTRY FORD MERCURY JEEP;
D'AMICO LINCOLN MERCURY, INC.;
DAYTON FORD, INC.; DFFLM, L.L.C.;
DOWNS FORD, INC.; ED CARNEY FORD;
ELITE FORD, INC.; FETTE FORD, INC.;
FORD OF ENGLEWOOD, INC.;
FORD WORLD, L.L.C.; FREEHOLD FORD, INC.;
GEORGE WALL LINCOLN-MERCURY, INC.;
HILLSIDE AUTO MALL, INC.;
IRWIN LINCOLN-MERCURY; JACK TREBOUR FORD;
KEN SMITH MOTORS, INC.; LARSON FORD, INC.;
LIBERTY LINCOLN-MERCURY, INC.;
LICCARDI FORD, INC.;
LICCARDI LINCOLN MERCURY, INC.;
LILLISTON FORD, INC.;
MARGARINO FORD-MERCURY AND DAEWOO, L.L.C.;
MAHWAH SALES & SERVICE, INC.;
MALOUF FORD, INC.;
MALOUF LINCOLN MERCURY, INC.;
MAPLECREST FORD OF MENDHAM;
MAPLECREST LINCOLN-MERCURY, INC.;
MEDFORD FORD;
MONTCLAIR-BLOOMFIELD MOTORS, INC.;
MULLANE FORD, INC.;
OASIS FORD; PALISADE MOTORS, INC.;
PARK AVENUE FORD; PARKWAY FORD, INC.;
PISTILLI FORD, INC.; PNCLM, L.L.C.;

POINT PLEASANT FORD;
QUALITY LINCOLN MERCURY HYUNDAI, INC.;
RICKLES LINCOLN-MERCURY, L.L.C.;
RIDGEWOOD VILLAGE FORD, INC.;
RITTENHOUSE-KERR FORD, INC.;
RITTENHOUSE-KERR LINCOLN MERCURY, INC.;
RIVERVIEW FORD OF PENNSVILLE, INC.;
ROUTE 23 AUTO MALL; SOUTH SHORE FORD, INC.;
STADIUM FORD; STATELINE FORD, INC.;
STRAUB LINCOLN-MERCURY; TOM'S FORD;
TOWN & COUNTRY MOTORS, INC.;
TOWN MOTORS; VALLEY FORD;
WARNOCK FORD; WAYNE AUTO SALES;
WAYNE MOTORS, INC.; WEISLEDER, INC.;
CHAS S. WINNER;
WOODBRIDGE LINCOLN-MERCURY;
WYCKOFF FORD, INC.; WYMAN FORD, INC.,

Appellants No. 11-1307
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-02-cv-04146)
District Judge:  Honorable Peter G. Sheridan

_____

Argued January 23, 2012
Before:  FISHER and GREENAWAY, JR., *Circuit Judges*,

and JONES,[*] *District Judge.*

(Filed: April 09, 2012  )

Paul J. Halasz, Esq.
Dennis LaFiura, Esq.
Day Pitney
One Jefferson Road
Parsippany, NJ  07054-2891

Christopher T. Handman, Esq. (Argued)
Hogan Lovells US
555 Thirteenth Street, N.W.
Columbia Square
Washington, DC  20009-1109
        *Counsel for Ford Motor Company*

Ronald J. Campione, Esq.
Eric L. Chase, Esq. (Argued)
Stephen R. Knox, Esq.
Genevieve K. LaRobardier, Esq.
Bressler, Amery & Ross
325 Columbia Turnpike
P.O. Box 1980
Florham Park, NJ  07932
        *Counsel for Liberty Lincoln Mercury, Inc.*

---

[*]The Honorable John E. Jones, III, District Judge for the United States District Court for the Middle District of Pennsylvania, sitting by designation.

5

FISHER, *Circuit Judge*.

Ford Motor Co. ("Ford") appeals the District Court's grant of summary judgment in favor of Liberty Lincoln-Mercury, Inc., Lilliston Ford, Oasis Ford, and Warnock Ford (collectively, "Dealers" or "Franchisees") on the ground that Ford's New Jersey Cost Surcharge ("NJCS") violates the New Jersey Franchise Protection Act ("NJFPA"). The Franchisees cross-appeal the District Court's denial of their motion for summary judgment on the issue of damages and denial of their application for a 12% pre-judgment interest rate. They also cross-appeal the District Court's denial of their motion for summary judgment and grant of Ford's motion for summary judgment on certain engine and transmission reimbursement claims. For the reasons discussed below, we will affirm in part and reverse in part the District Court's orders.

## I. Background and Procedural History

Ford manufactures vehicles and sells them through a nationwide network of independent franchise dealers. The dealers purchase vehicles from Ford at wholesale prices and resell them at retail prices. With each new vehicle sold, Ford provides a basic manufacturer's warranty that entitles the customer to have Ford repair or replace certain defective vehicle components. Customers can bring their vehicles to

any Ford dealer, regardless of where they purchased the vehicles, and obtain warranty service free of charge. Ford then reimburses the dealers for their labor and parts used. Since 1994, Ford has provided dealers a mark-up of 40% over cost for most parts used in warranty services – this means that Ford pays the dealer, in total, 140% of the cost of those parts. However, under the New Jersey Franchise Protection Act ("NJFPA"), Ford must reimburse dealers for warranty parts at the "prevailing retail rate," which is the rate dealers charge retail customers in connection with non-warranty work. N.J. Stat. Ann. § 56:10-15(a). As a result, New Jersey dealers are reimbursed at higher rates than their counterparts in other states.

In 1991, Ford implemented a Dealer Parity Surcharge ("DPS") in order to recoup the increased cost of reimbursing New Jersey dealers under the NJFPA. Under the DPS, Ford calculated, for each New Jersey dealer, the cost of increased warranty reimbursements due to the higher retail reimbursement rate, and then divided that total by the number of wholesale vehicles purchased by that same dealer. That amount constituted the surcharge added to the wholesale price of every vehicle purchased by that specific dealer. Consequently, the wholesale vehicle surcharge a dealer faced would increase in direct proportion to the amount of warranty claims the dealer submitted.

In 1992 and 1995, Liberty Lincoln-Mercury, Inc. and other franchise dealers filed suit against Ford, contending that the DPS was unlawful. The United States District Court for the District of New Jersey dismissed the 1992 lawsuit without prejudice but granted summary judgment for the dealers in

the 1995 lawsuit on the grounds that the DPS violated the NJFPA. *Liberty Lincoln-Mercury, Inc. v. Ford Motor Co. (Liberty I)*, 923 F. Supp. 665, 667-70 (D.N.J. 1996). In affirming the district court's order, we recognized that the NJFPA did "not preclude cost-recovery systems effected through wholesale vehicle price increases, but reject[ed] Ford's contention that the DPS constitute[d] such a system." *Liberty Lincoln-Mercury, Inc. v. Ford Motor Co. (Liberty II)*, 134 F.3d 557, 564 (3d Cir. 1998). The DPS, which accrued in direct proportion to the amount of warranty reimbursement submitted by each New Jersey dealer, "did not function as a wholesale price increase effected through vehicle sales transactions[.]" *Id.* at 565. Instead, it "automatically reduc[ed the franchisees'] reimbursements to below-retail rates, violat[ing] the NJFPA's clear mandate that the franchisor 'shall reimburse' the franchisee for warranty parts 'in an amount equal to the prevailing retail price.'" *Id.* (citing N.J. Stat. Ann. § 56:10-15(a)).

Subsequently, Ford ceased assessing the DPS and devised a new cost-recovery system, termed the New Jersey Cost Surcharge ("NJCS"). Under the NJCS, Ford calculated its total cost of complying with the NJFPA across all New Jersey dealers and divided that cost by the total number of wholesale vehicles sold in the State. This resulted in a flat surcharge for every wholesale vehicle sold in the State, rather than a surcharge that varied across dealers. Thus, a dealer's total NJCS increased in proportion to the number of vehicles the dealer purchased, regardless of how many warranty repairs the dealer submitted to Ford.

In 2002, shortly after the NJCS took effect, a group of New Jersey Dealers filed a complaint alleging that the NJCS violated, among other laws, the NJFPA. The District Court granted summary judgment in favor of the Dealers on the issue of liability. *Liberty Lincoln-Mercury, Inc. v. Ford Motor Co.* (*Liberty III)*, No. 02-4146(WGB), 2006 WL 1098178, at *4-5 (D.N.J. Mar. 31, 2006).[1] However, the District Court rejected the Dealers' argument that they were entitled, as a matter of law, to full reimbursement of the surcharge without proving actual damages. Accordingly, it denied the Dealers' motion for summary judgment on the issue of damages as well as their application for a 12% pre-judgment interest rate under N.J. Stat. Ann. § 56:10-13.5. The District Court also denied the Dealers' motion for summary judgment and granted Ford's motion for summary judgment on certain engine and transmission assembly reimbursement claims.

Because the District Court established that the Dealers must prove actual damages for the NJFPA violation, four of the sixty-five plaintiffs proceeded to a jury trial. The jury awarded the full amount of damages requested by each of the Dealers. Ford filed a timely appeal on the issue of liability under the NJFPA. The Dealers filed a timely cross-appeal on the issue of damages and application for a 12% pre-judgment

---

[1] Following this ruling, the District Court preliminarily enjoined Ford from imposing the NJCS, but we vacated the injunction because the Dealers failed to show irreparable injury. *See Liberty Lincoln-Mercury, Inc. v. Ford Motor Co. (Liberty IV)*, 562 F.3d 553, 557 (3d Cir. 2009).

interest rate, as well as the engine and transmission assembly reimbursement claims.

## II. Jurisdiction and Standard of Review

The District Court had jurisdiction under 28 U.S.C. §§ 1331, 1337, and 1367.  We have appellate jurisdiction over the District Court's final judgment under 28 U.S.C. § 1291.

"Review of a district court's decision to grant a motion for summary judgment is plenary." *Horn v. Thoratec Corp.*, 376 F.3d 163, 165 (3d Cir. 2004) (citations omitted). Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Horn*, 376 F.3d at 166 (citations omitted).  We must view the facts in the light most favorable to the non-moving party, who is entitled to "all reasonable inferences from the record." *Horn*, 376 F.3d at 166 (citations omitted).  We exercise plenary review over the District Court's conclusions of law.  *In re Tower Air, Inc.*, 397 F.3d 191, 195 (3d Cir. 2005) (citation omitted).

## III. Discussion

### A. The New Jersey Franchise Protection Act

The NJFPA provides that:

"The motor vehicle franchisor shall reimburse each motor vehicle franchisee for such [warranty] services as are rendered and for such parts as are supplied, in an amount equal to the

10

prevailing retail price charged by such motor vehicle franchisee for such services and parts in circumstances where such services are rendered or such parts supplied other than pursuant to warranty; provided that such motor vehicle franchisee's prevailing retail price is not unreasonable when compared with that of the holders of motor vehicle franchises from the same motor vehicle franchisor for identical merchandise or services in the geographic area in which the motor vehicle franchisee is engaged in business."

N.J. Stat. Ann. § 56:10-15(a). Ford appeals the District Court's holding that the NJCS violates the express language of the statute and frustrates its legislative purpose. We review the District Court's interpretation of the NJFPA *de novo* and construe the statute as we believe the New Jersey Supreme Court would construe it. *Liberty II*, 134 F.3d at 563. "As a general rule of statutory construction, we look first to the language of the statute. If the statute is clear and unambiguous on its face and admits of only one interpretation, we need delve no deeper than the act's literal terms to divine the Legislature's intent." *First Resolution Inv. Corp. v. Seker*, 795 A.2d 868, 873 (N.J. 2002) (citation omitted). When the language of the statute is ambiguous, courts may look to the statute's history, policy, purpose, and other extrinsic aids to ascertain statutory intent. *See Cedar Cove, Inc. v. Stanzione*, 584 A.2d 784, 788-89 (N.J. 1991).

Consistent with this Court's reasoning in *Liberty II*, 134 F.3d at 564-65, we conclude that Ford's assessment of

11

the NJCS does not violate the clear text of the NJFPA.[2] The *Liberty II* Court stated that in general, Ford was permitted to recover its cost of complying with the NJFPA. *Id.* at 564. It drew a distinction, however, between permissible and impermissible cost-recovery systems. *Id.* at 564-65.

When determining whether Ford's DPS was a permissible cost-recovery system, the *Liberty II* Court looked to our sister circuit's interpretation of a similar Maine statute in *Acadia Motors, Inc. v. Ford Motor Co. (Acadia)*, 44 F.3d 1050 (1st Cir. 1995), *superceded by statute*, Me. Rev. Stat. tit. 10 § 1176, *as recognized in Alliance of Auto. Mfrs v. Gwadosky*, 430 F.3d 30 (1st Cir. 2005). *See Neptune T.V. & Appliance Serv. Inc. v. Litton Microwave Cooking Prods. Div., Litton Sys., Inc.*, 462 A.2d 595, 600 (N.J. Super. Ct. App. Div. 1983) (holding when no state court has construed the relevant statutory language, New Jersey courts look to cases construing similar statutes in other jurisdictions). The United States Court of Appeals for the First Circuit held that the text of the Maine statute clearly permitted wholesale price increases because the statute "sa[id] nothing about wholesale or retail prices, and apparently l[eft] the manufacturer free to increase wholesale prices, and the dealer to increase retail prices." *Acadia*, 44 F.3d at 1056. Thus, the Maine statute

---

[2] The parties disagree as to whether this Court's reasoning in *Liberty II*, 134 F.3d 557 (3d Cir. 1998), is binding precedent or dicta. We find it unnecessary to resolve this dispute because we agree with the Court's thorough reasoning in *Liberty II* and our holding today is consistent with the same.

regulated warranty reimbursements, but not wholesale or retail vehicle transactions. *See Liberty II*, 134 F.3d at 564 (interpreting *Acadia*, 44 F.3d at 1056).

Under this interpretation, Ford's warranty parity surcharge ("WPS") in *Acadia* was a bona fide wholesale price term beyond the realm of statutory regulation because the WPS imposed a flat surcharge on all wholesale vehicle prices. *Id.* It accrued in proportion to the number of vehicles a dealer purchased, regardless of the amount of warranty reimbursement claims submitted. *Id.* The *Liberty II* Court found that, in contrast to the WPS, the DPS in New Jersey accrued in direct proportion to the amount of warranty reimbursement claims submitted by each dealer, and thus, was not a bona fide wholesale price term. *Id.* at 564-65. Rather, it "automatically reduc[ed the Dealers'] reimbursements to below-retail rates, violat[ing] the NJFPA's clear mandate that the franchisor 'shall reimburse' the franchisee for warranty parts 'in an amount equal to the prevailing retail price.'" *Id.* at 565 (citing N.J. Stat. Ann. § 56:10-15(a)).

Consistent with our interpretation of *Acadia* in *Liberty II*, we hold that the text of the NJFPA clearly permits cost-recovery systems using bona fide wholesale price increases. Like the Maine statute in *Acadia*, the NJFPA regulates warranty reimbursements but does not impose limitations on wholesale vehicle transactions. Thus, reading "a restriction against wholesale price increases" into the statute "would improperly establish 'a rule unsupported by state statute.'" *Liberty II*, 134 F.3d at 564 (quoting *Acadia*, 44 F.3d at 1057). And like the WPS at issue in *Acadia*, the NJCS is a bona fide

13

wholesale price increase. It is a flat surcharge assessed on all wholesale vehicles sold within the State, so the surcharge that each Dealer pays depends on the number of wholesale vehicles purchased, regardless of the amount of warranty claims submitted by each Dealer.[3] Therefore, it is not subject to regulation under the NJFPA.

Because the statute is clear, we do not need to venture beyond its text to ascertain the Legislature's intent. *First Resolution Inv. Corp.*, 795 A.2d at 873 (citation omitted). But we elect to address the Dealers' contention that there is no real difference between the DPS struck down in *Liberty II* and the NJCS we uphold today because both contravene the statute's remedial purpose to "equalize the disparity of bargaining power in franchisor-franchisee relations." *Liberty*

---

[3] The Dealers suggest that the NJCS is not a true wholesale price increase because the price increase is not built into the suggested retail price (or sticker price), but assessed only as a surcharge to the base wholesale price. However, nothing in the NJFPA, which does not regulate retail or wholesale transactions, requires the suggested retail price to reflect all increases in the wholesale price. Thus, we have no authority to impose such a restriction that is unsupported by the statute. *See Acadia Motors, Inc. v. Ford Motor Co.*, 44 F.3d 1050, 1057 (1st Cir. 1995), *superceded by statute*, Me. Rev. Stat. tit. 10 § 1176, *as recognized in Alliance of Auto. Mfrs v. Gwadosky*, 430 F.3d 30 (1st Cir. 2005) (holding that Maine's statute, which remained silent as to wholesale transactions, did not require Ford to increase its sticker price to reflect all increases in the wholesale price).

14

*II*, 134 F.3d at 566 (citations omitted). In *Liberty II*, we held that the DPS violated the text and remedial legislative intent of the NJFPA because dealers had no choice but to bear the full cost of the retail-rate warranty reimbursements. *Id.* at 565 n.6. Under the standard franchise agreement, dealers "must perform all warranty repairs brought to [their] dealership[s] and cannot charge customers for those repairs[.]" *Id.* Thus, they "cannot control the volume, timing or profitability of those repairs." *Id*. Accordingly, they were unable to mitigate the increased cost imposed by the DPS, which depended entirely on the amount of warranty work performed. *Id.* However, the NJCS does not impose this hardship because the surcharge depends on the number of wholesale vehicles Dealers choose to purchase from Ford, and Dealers are able to control the volume, timing, and profitability of the vehicles they purchase.

We recognize that after the *Acadia* Court upheld Ford's WPS, the Maine Legislature amended the warranty reimbursement statute to expressly prohibit a manufacturer from "recover[ing] its cost for reimbursing a franchisee for parts and labor[.]" Me. Rev. Stat. tit. 10, § 1176. However, contrary to the District Court's contention, *see Liberty III*, 2006 WL 1098178, at *3 n.6, this does not mean that the *Acadia* Court misconstrued the Maine statute. Rather, the Maine Legislature's subsequent amendment to the statute indicates that legislatures are capable of speaking clearly to prohibit franchisors from recovering compliance costs when that is the legislature's intention. *See* Me. Rev. Stat. tit. 10 § 1176; *see also* Fla. Stat. § 320.696(6) (categorically prohibiting cost recovery); Va. Code Ann. § 46.2-1571(B)(5)

15

(same); W. Va. Code § 17A-6A-8a(3) (same). But where, as here, the statute does not limit such cost recovery schemes, we cannot impose additional restrictions unsupported by the clear language of the statute.[4]

### B. Engine and Transmission Assembly Claims

Dealers[5] submit that the District Court erred in denying their motion for summary judgment and granting Ford's motion for summary judgment on certain engine and transmission assembly reimbursement claims. A separate provision of the NJFPA governs engine and transmission repairs,[6] recognizing that manufacturers often provide these

---

[4] Because we hold that Ford's assessment of the NJCS does not violate the NJFPA, we need not reach the merits of the Dealers' cross-appeal on the issue of damages and the 12% pre-judgment interest rate.

[5] Of the five plaintiffs cross-appealing the District Court's decision, only Liberty Lincoln-Mercury and Oasis Ford are maintaining their engine and transmission assembly claims.

[6] The relevant provision of the statute reads:

16

expensive parts to their dealers on an as-needed basis, rather than requiring the dealers to keep them in stock. When the manufacturer follows that procedure in connection with a warranty service, the NJFPA does not require full retail reimbursement; instead, it requires the franchisor to reimburse the franchisee at 30% of the part's wholesale price. N.J. Stat. Ann. § 56:10-15(e). Dealers claim that Ford failed

---

"If a motor vehicle franchisor supplies a part or parts for use in a repair rendered under a warranty other than by sale of that part or parts to the motor vehicle franchisee, the motor vehicle franchisee shall be entitled to compensation equivalent to the motor vehicle franchisee's average percentage markup on the part or parts, as if the part or parts had been sold to the motor vehicle franchisee by the motor vehicle franchisor. The requirements of this section shall not apply to entire engine assemblies and entire transmission assemblies. In the case of those assemblies, the motor vehicle franchisor shall reimburse the motor vehicle franchisee in the amount of 30% of what the motor vehicle franchisee would have paid the motor vehicle franchisor for the assembly if the assembly had not been supplied by the franchisor other than by the sale of that assembly to the motor vehicle franchisee."

N.J. Stat. Ann. § 56:10-15(e).

17

to reimburse them for certain engine and transmission assembly repairs.

The District Court's grant of summary judgment was proper for two reasons. First, the claims were procedurally barred because the Dealers failed to properly plead them. The well-established notice pleading standard under Federal Rule of Civil Procedure 8(a) requires that "the complaint . . . 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Thomas v. Independence Twp.*, 463 F.3d 285, 295 (3d Cir. 2006) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). In their complaint, the Dealers stated that "Ford has refused to reimburse dealers *at retail* for engine and transmission assemblies." Second Amended Complaint and Demand for Jury Trial, at 13, *Liberty Lincoln-Mercury, Inc. v. Ford Motor Co.*, 2006 WL 1098178 (D.N.J. March 31, 2006) (No. 02-4146) (emphasis added). And Ford settled with the Dealers on these claims of underpayment. However, like the District Court, we cannot find any language in the complaint that alleges Ford's complete failure to pay any amount for certain engine and transmission assemblies. Because the complaint failed to provide notice to Ford regarding its alleged failure to reimburse the Dealers for these repairs, the District Court properly granted summary judgment.

The Dealers submit that even if Ford's alleged complete failure to pay were not raised in the pleadings, these claims, raised in the motion for summary judgment, should be "treated in all respects as if raised in the pleadings" because the issue was "tried by the parties' express or implied consent." Fed. R. Civ. P. 15(b)(2). Assuming, without

18

holding, that Rule 15(b) applies at the summary judgment stage,[7] the Dealers still failed to prove that Ford expressly or impliedly consented to try the engine and transmission assembly claims. Because there is no evidence of Ford's express consent, the Dealers contend that Ford impliedly consented to try the claims. A finding of implied consent depends on three factors: "whether the parties recognized that the unpleaded issue entered the case at trial, whether the evidence that supports the unpleaded issue was introduced at trial without objection, and whether a finding of trial by

---

[7] Courts of Appeals for the D.C., Ninth, and Eleventh Circuits have concluded that Rule 15(b), captioned "Amendments During and After Trial," may not apply to pre-trial motions because the Rule is designed to address discrepancies between pleadings and evidence introduced at trial. *See Harris v. Sec'y, U.S. Dep't of Veterans Affairs*, 126 F.3d 339, 344 n.3 (D.C. Cir. 1997); *Crawford v. Gould*, 56 F.3d 1162, 1168-69 (9th Cir. 1995); *Blue Cross & Blue Shield of Ala. v. Weitz*, 913 F.2d 1544, 1550 (11th Cir. 1990). However, other circuits have applied Rule 15(b) at the summary judgment stage. *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 569 (2d Cir. 2000); *Suiter v. Mitchell Motor Coach Sales, Inc.*, 151 F.3d 1275, 1279-80 (10th Cir. 1998); *Smith v. Transworld Sys., Inc.*, 953 F.2d 1025, 1030 (6th Cir. 1992); *Walton v. Jennings Cmty. Hosp., Inc.*, 875 F.2d 1317, 1320 n.3 (7th Cir. 1989); *Canion v. Randall & Blake*, 817 F.2d 1188, 1193 (5th Cir. 1987). We decline to address the issue today because resolution of it is unnecessary to the disposition of this case.

19

consent prejudiced the opposing party's opportunity to respond." *Douglas v. Owens*, 50 F.3d 1226, 1236 (3d Cir. 1995) (quoting *Portis v. First Nat'l Bank*, 34 F.3d 325, 332 (5th Cir. 1994)).

First, there is no evidence the parties recognized that the engine and transmission claims for nonpayment entered into the litigation. The complaint never alleged the nonpayment claims, and none of the court proceedings clearly referenced the claims. Thus, the parties never had an opportunity to recognize the nonpayment claims.

Under the second factor, there is "implied consent to litigate an issue if there is no objection to the introduction of evidence on the unpleaded issue, as long as the non-objecting party was fairly apprised that the evidence went to the unpleaded issue." *Francois v. Francois*, 599 F.2d 1286, 1294 n.6 (3d Cir. 1979) (citation omitted). But the documents presented by the Dealers here consistently refer to the claim that Ford under-reimbursed for the repairs, rather than the claim that Ford failed to reimburse at all. For example, the District Court's September 28, 2007 Order denying summary judgment on the engine and transmission claims and permitting further discovery stated "Plaintiffs assert, on information and belief, that Ford failed to reimburse dealer *at the 30% retail rate*." *Liberty Lincoln-Mercury, Inc. v. Ford Motor Co.*, No. 02-4146, 2007 WL 2892943, at *2 (D.N.J. Sept. 28, 2007) (emphasis added). Discovery requests submitted by Ford also referred to claims of under-reimbursement, rather than nonpayment. *See, e.g.*, Ford Motor Company's Fourth Request for Production of Documents to Plaintiffs at 5 *Liberty Lincoln-Mercury, Inc. v.*

20

*Ford Motor Co.*, 2007 WL 2892943, at *2 (D.N.J. Sept. 28, 2007) (No. 02-4146) (requesting "[a]ll documents relating to any warranty repair involving a vehicle engine and/or transmission performed by Plaintiff, which Plaintiff contends Ford has under reimbursed Plaintiff"). In addition, when Ford's counsel acknowledged a potential settlement of the claims during the January 25, 2010 hearing, counsel was specifically referring to instances where Ford "didn't pay [the reimbursement rate] at 30 percent." Transcript of Proceedings at 36, *Liberty Lincoln-Mercury, Inc. v. Ford Motor Co.*, 2010 WL 624877 (D.N.J. January 25, 2010) (No. 02-4146). Even if some language in the record may be broad enough to cover both the nonpayment and under-reimbursement claims, there is no implied consent where, as here, "evidence relevant to the new claim is also relevant to the claim originally pled, because the defendant does not have any notice that the implied claim was being tried." *Douglas*, 50 F.3d at 1236 (citations omitted). Thus, based on the record, we cannot say that Ford was "fairly apprised that the evidence went to the unpleaded issue" regarding nonpayment. *Francois*, 599 F.2d at 1294 n.6.

Finally, the addition of a new claim after eight years of litigation and one week before the trial would have prejudiced Ford by requiring it to conduct substantial additional discovery when much of the relevant evidence was likely lost. *See Douglas*, 50 F.3d at 1236 (finding prejudice when district court permitted plaintiff to assert new theory of liability "at such a late stage in the proceedings," without defendant "having had the opportunity to defend against this new claim"). Therefore, we cannot hold that Ford impliedly

21

consented to try the engine and transmission nonpayment claims.

The District Court's grant of summary judgment was also proper because the Dealers' failure to submit any written payment claims to Ford barred these engine and transmission nonpayment claims. The Dealers argue that written claims were unnecessary because Ford's supplying of replacement engine and transmission parts to them at no cost provided adequate notice and Ford should have automatically provided the 30% reimbursement. We reject this argument because under the NJFPA, the franchisor may require the franchisees seeking warranty reimbursement claims to "reasonably substantiate the claim in accordance with reasonable written requirements of the motor vehicle franchisor, provided that the motor vehicle franchisee had been notified of the requirements prior to the time the claim arose and the requirements were in effect at the time the claim arose." N.J. Stat. Ann. § 56:10-15(f). Thus, Ford had the authority to require the Dealers to file written claims, and it did so under its Sales and Service Agreement. The Agreement, which governs the relationship between Ford and its franchisees, unambiguously states that the "Dealer shall submit claims to the Company for reimbursement for the parts and labor used in performing warranty [repairs.] . . . The Dealer shall maintain adequate records and documents supporting such claims in accordance with the provisions of the Warranty Manual." Joint App. at 148. Ford's Warranty Manual for the past ten years consistently indicated that written payment claims were required for reimbursement. *See* Decl. of Allen Taber, Ford Motor Co. Supervisor of Reimbursement Policy

22

within the Global Warranty Analysis and Admin. Dep't at ¶ 3, 7, *Liberty Lincoln-Mercury, Inc. v. Ford Motor Co.*, No. 02-4146, (D.N.J. Sept. 22, 2010).  Given that the Dealers were adequately notified of the written claims requirement but failed to satisfy the procedure, the District Court properly granted Ford's motion for summary judgment.

## IV.  Conclusion

For the foregoing reasons, the District Court's orders will be affirmed in part and reversed in part.  We hold that (1) the New Jersey Cost Surcharge does not violate the New Jersey Franchise Protection Act; and (2) Ford was entitled to summary judgment on the engine and transmission assembly reimbursement claims.