**NOT PRECDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 12-4342

_____

BAYSHORE FORD TRUCK SALES, INC., a Delaware corporation;
MOTOR CITY FORD TRUCKS, INC., a Delaware corporation;
COLONY FORD TRUCK CENTER, INC., a Rhode Island corporation,
individually and on behalf of all others similarly situated

v.

FORD MOTOR COMPANY,

Appellant

_____

On Appeal from the United States District Court
for the District of New Jersey
(D. C. No. 2-99-cv-00741)
District Judge:  Honorable Jose L. Linares

_____

Argued on July 18, 2013

Before:  RENDELL, SMITH and ROTH, <u>Circuit Judges</u>

(Opinion filed: August 26, 2013)

_____

O P I N I O N

_____

Ronald J. Campione, Esq.
Eric L. Chase, Esq.
Genevieve K. LaRobardier, Esq.
Bressler , Amery & Ross

325 Columbia Turnpike
P.O. Box 1980
Florham Park NJ 07932-0000

William A. Kershaw, Esq.
Kershaw, Cutter & Ratinoff
401 Watt Avenue
Sacramento, CA 95864

Steven M. Klepper, Esq.
Jean E. Lewis, Esq.
James P. Ulwick, Esq. [Argued]
Kramon & Graham
One South Street
Suite 2600, Commerce Place
Baltimore, MD 21202-0000

Elizabeth M. Leonard, Esq.
Gordon A. Rehnborg, Jr., Esq.
McDowell & Osburn
282 River Road
Manchester, NH 03104

  *Counsel for Appellees :Badger Truck Center, Inc., Bayshore Ford Truck Sales, Inc., Boyer Ford Truck Sales, Inc., Boyer Ford Trucks Sioux Falls, Inc., Carmenita Ford Truck Sales, Inc., Colonial Ford Truck Sales, Inc., Colonial Trucks of Tidewater, Inc., Colony Ford Truck Center, Inc., Freeway Ford Truck Sales, Inc., Motor City Ford Trucks, Inc. and West Gate Ford Truck Sales, Inc.*

Paul J. Halasz, Esq.
Dennis LaFiura, Esq.
Day Pitney
One Jefferson Road
Parsippany, NJ 07054

Christopher T. Handman, Esq. [Argued]
Sean M. Marotta, Esq.
Hogan Lovells US
555 Thirteenth Street, N.W.
Columbia Square
Washington, DC 20004

  *Counsel for Appellant*

2

**ROTH**, <u>Circuit Judge</u>:

This appeal arises from Ford's alleged breach of its Sales and Service Agreement with its heavy truck dealer network (the Dealers). The District Court granted summary judgment to the Dealers, holding that Ford was liable for breaching the Sales and Service Agreement. A jury subsequently awarded the Dealers approximately $29 million in damages. For the reasons that follow, we will reverse the District Court's grant of summary judgment to the Dealers, vacate the jury's verdict, and remand the case to the District Court with instructions to enter judgment in Ford's favor.

## I.    Background[1]

### A.    Ford's Heavy Truck Business

Until 1997, Ford was a manufacturer of heavy trucks. Ford's business model was straightforward and common in the automotive industry: Ford would manufacture heavy trucks and sell them through the Dealers—an independent network of franchisees. Ford's relationship with the Dealers was governed by a standard contract, the Sales and Service Agreement.

In the 1980s and 1990s, Ford's heavy truck business became unprofitable, sustaining losses of $131 million in 1996. In early 1997, Ford decided to sell its heavy truck business to Freightliner, another truck manufacturing company. Under the sales agreement with Freightliner, Ford agreed to exit the heavy truck industry for ten years.

---

[1] We write primarily for the parties, who are familiar with the facts of this case. Therefore, we will set forth only those facts necessary to our analysis.

In addition, one of the terms of the sale to Freightliner required Freightliner to offer all Ford heavy truck franchisees a franchise selling Freightliner trucks.

In mid-1997, Ford stopped accepting orders from its dealers for heavy trucks. Ford ceased manufacturing heavy trucks altogether by the end of the year. However, even though Ford no longer produced heavy trucks, Ford continued to manufacture parts and accessories for heavy trucks. Those parts and accessories were then distributed to the Dealers for retail sale. The Dealers also continued to provide warranty work on Ford heavy trucks and did business using Ford's trademarks. The Dealers' post-1997 revenue was substantial. In fact, the Dealers' revenue from warranty work exceeded revenues from their sales of heavy trucks.

**B.      The Sales and Service Agreement**[2]

Under the Sales and Service Agreement, Ford agreed to distribute "COMPANY PRODUCTS" to the Dealers. In exchange, the Dealers would sell and perform warranty work on those products using only parts, accessories, and equipment sold by Ford. The dispute in this appeal revolves around the definition of "COMPANY PRODUCTS" and how that definition affects the provisions of Paragraph 13, which governs changes in sales of those products.

Paragraph 1(a) of the Sales and Service Agreement defines Company Products as follows:

_____

[2] The Sales and Service Agreement provided that it was to be construed in accordance with Michigan law.

4

"COMPANY PRODUCTS" shall mean such (1) new trucks and chassis of series 850 or higher designations and (2) parts and accessories therefor, as from time to time are offered for sale by the Company . . . .

The relevant portion of Paragraph 13 of the Sales and Service Agreement reads as follows:

The Company may change the design of any COMPANY PRODUCT, or add any new or different COMPANY PRODUCT or line, series or body style of HEAVY DUTY TRUCKS, at any time and from time to time, without notice or obligation to the Dealer . . . . The Company may discontinue any HEAVY DUTY TRUCK or other COMPANY PRODUCT at any time without liability to the Dealer.

The Sales and Service Agreement further provided that, if either party terminated the agreement, the Dealers would no longer be eligible to use Ford's trademarks, perform warranty work, or sell Ford heavy trucks, parts, or accessories.

## C.    Procedural Posture

In 1999, the Dealers filed a class action complaint against Ford. They alleged a single federal cause of action—a violation of the Automobile Dealer's Day in Court Act, 15 U.S.C. § 1221, *et seq.*—and several Michigan common law causes of action, including breach of contract, fraud, breach of the covenant of good faith and fair dealing, and unjust enrichment. The Dealers and Ford filed cross-motions for summary judgment. The District Court ruled in Ford's favor on all of the Dealers' claims, except the breach of contract claim. As to the breach of contract claim, the District Court held that Ford's decision to discontinue manufacturing heavy trucks constituted a breach of the Sales and Service Agreement.

5

The District Court held that damages could not be calculated on a class-wide basis. As a result, Ford, the Dealers, and the District Court agreed to hold a bellwether trial to assess the damages of eleven plaintiffs. The jury ultimately awarded those plaintiffs approximately $29 million in damages. Ford now appeals both the denial of its motion for summary judgment on the Dealers' breach of contract claim and the jury award.

## II. Standard of Review

We exercise plenary review over a grant of summary judgment. *See Liberty Lincoln-Mercury, Inc. v. Ford Motor Co.*, 676 F.3d 318, 323 (3d Cir. 2012). Summary judgment is appropriate only when there is no issue in dispute regarding any material fact, such that the moving party is entitled to judgment as a matter of law. *Id*. A grant of summary judgment is reviewed in the light most favorable to the non-moving party. *Id*. This means that all reasonable inferences must be drawn in the non-movant's favor. *Id*.

"[C]ontract construction, that is, the legal operation of the contract, is a question of law mandating plenary review." *In re Cendant Corp. Prides Litig.*, 533 F.3d 188, 193 (3d Cir. 2000).

## III. Discussion[3]

Under Michigan law, the elements of a claim for breach of contract are (1) the existence of a contract, (2) a breach of the agreement, and (3) damages. *Miller-Davis Co. v. Ahrens Constr., Inc.*, 817 N.W.2d 609, 619 (Mich. App. 2012). A breach occurs "when the promisor fails to perform under the contract." *Vandendries v. General Motors*

---

[3] The District Court had subject matter jurisdiction under 28 U.S.C. § 1331 and § 1367. We have appellate jurisdiction under 28 U.S.C. § 1291.

*Corp.*, 343 N.W.2d 4, 7 (Mich. App. 1983). Here, the question whether Ford breached the Sales and Service Agreement hinges on the interpretation of Paragraph 13 of the agreement and the definition of "COMPANY PRODUCT."

The relevant portion of Paragraph 13 of the Sales and Service Agreement states that Ford "may discontinue any HEAVY DUTY TRUCK or other COMPANY PRODUCT at any time without liability[.]" The District Court held that Ford's decision to cease manufacturing heavy trucks was a breach of the Sales and Service Agreement because "Ford did not have the right to discontinue or cease producing all products, i.e. all heavy trucks . . . . [A]bsent proper termination of the Agreements, Ford did not have a right to stop supplying heavy trucks altogether." In other words, the District Court ruled that Ford breached the Sales and Service Agreement by completely withdrawing from the heavy truck market. *Cf. Buono Sales, Inc. v. Chrysler Motors Corp.*, 449 F.2d 715, 721-22 (3d Cir. 1971) (en banc) (noting that that a manufacturer's reservation of the right to discontinue distributing some products to a dealer did not allow the manufacturer to completely withdraw from the market).

The District Court's interpretation of the Sales and Service Agreement was wrong because it misconstrued the meaning of "COMPANY PRODUCTS." The definition of "COMPANY PRODUCTS" includes not only heavy trucks, but also Ford parts and accessories. Applying the proper definition of "COMPANY PRODUCTS" to the undisputed facts of the case, it is clear that Ford did not breach the Sales and Service Agreement. Here, although Ford discontinued the production of all heavy trucks, Ford continued to manufacture and distribute parts and accessories to the Dealers. As a result,

7

the District Court's conclusion that Ford ceased production of all "COMPANY

PRODUCTS" was incorrect.

Instead, in light of the definition of "COMPANY PRODUCTS" and the

undisputed factual record, the District Court should have held that Ford satisfied its

obligation to perform under the terms of the Sales and Service Agreement. Ford satisfied

its end of the bargain by continuing to provide "COMPANY PRODUCTS"—i.e. parts

and accessories—to the Dealers. Therefore, Ford's decision to discontinue production of

all heavy trucks was permissible under the Sales and Service Agreement because

Paragraph 13 allowed Ford to discontinue (at the very least) *some* "COMPANY

PRODUCTS" without liability.[4]

The Dealers insist that the definition of "COMPANY PRODUCTS" must be read

as applying to both heavy trucks *and* parts and accessories—i.e. that Ford's promise to

provide "COMPANY PRODUCTS" required delivery of both heavy trucks as well as

parts and accessories. As a result, the Dealers argue that Ford's failure to deliver heavy

trucks breached the contract. This argument is unpersuasive. Looking to the text of the

Sales and Service Agreement, it repeatedly refers to both "COMPANY PRODUCTS"

and "COMPANY PRODUCT." For example, Paragraph 10 states: "The Company has

the right . . . to change . . . terms of sale affecting COMPANY PRODUCTS . . . . In the

event the Company shall increase the [price] for any COMPANY PRODUCT, the Dealer

---

[4] Ford argues that the language in Paragraph 13 of the Sales and Service Agreement stating that Ford could "discontinue *any* . . . COMPANY PRODUCT" means that Ford had the right to discontinue *all* "COMPANY PRODUCTS." We need not reach this distinction because Ford did not discontinue all "COMPANY PRODUCTS."

shall have the right to cancel . . . any orders for such product." This language demonstrates that a variety of products are contained within the designation "Company Products." Thus, Ford's obligation to provide one product, *e.g.*, heavy trucks, is severable from its obligation to provide other products, *e.g.*, parts and accessories. In fact then, Ford continued to provide the Dealers with COMPANY PRODUCTS because Ford continued to supply the Dealers with parts and accessories. As a result, Ford did not breach the Sales and Service Agreement.

## IV.    Conclusion

For the foregoing reasons, we will reverse the District Court's grant of summary judgment to the Dealers, vacate the District Court's entry of judgment for the Dealers on the jury's verdict, and remand the matter to the District Court with instructions to enter judgment in Ford's favor on the Dealers' breach of contract claim.